IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DAVID O. WHITE,

         Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner, Social Security
Administration,

         Defendant.

Case No. 15-CV-27-CVE-FHM

## REPORT AND RECOMMENDATION

Plaintiff, David O. White, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits. The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment

for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## **Background**

Plaintiff's May 23, 2007, application for disability benefits was denied initially and on reconsideration, an ALJ decision denying benefits was entered on October 22, 2009, and reversed on appeal to the district court for a supplemental hearing to be held. [R. 655]. Another ALJ decision was issued on remand, finding Plaintiff disabled after December 5, 2011, due to Plaintiff's age and the lack of transferable skills. [R. 666]. The Appeals Council remanded that decision for further consideration. A hearing was held on September 11, 2013, after which a decision was issued on October 24, 2013, by ALJ David W. Engel. That decision, [R. 505-521], is the subject of this appeal. The Appeals Council denied further review. [R. 440]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. The period under review on this appeal is from May 1, 2007 to December 4, 2011.

Plaintiff was 42 years old on the alleged date of onset of disability. He has a high school education and past relevant work as a plumber's helper and assembler. He claims to have been unable to work since May 1, 2007, as a result of degenerative disk disease of the lumbar spine, status post lumbar surgery, HIV/AIDS, and generalized anxiety disorder.

## The ALJ's Decision

The ALJ determined that from May 1, 2007 to December 4, 2011 Plaintiff had the residual functional capacity (RFC) to perform the lifting and carrying requirements of light and sedentary work. He could walk or stand a combined total of 2 hours in an 8-hour workday, and could sit for 6 hours in a workday. He was able to climb ramps or stairs occasionally; crawl, bend, stoop, and crouch occasionally. He was unable to climb ropes, scaffolds, or ladders and could not work in environments with exposure to unprotected heights and dangerous moving machine parts. He could reach overhead only occasionally and could not use foot pedals more than occasionally. He was able to understand, remember, and carry out simple instructions, but was unable to interact with the general public more than occasionally, either in person or by telephone. [R. 512].

Based on the testimony of a vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that the ALJ's RFC is unsupported by the substantial evidence of the record as a whole, and the ALJ did not sustain the Commissioner's burden at step five.

## Analysis

For ease of analysis and discussion the undersigned has grouped Plaintiff's arguments into categories that relate to the topics discussed.[1]

### Consideration of Medical Opinions

Plaintiff asserts that the ALJ's RFC is not supported by the medical opinions of record. He argues that the ALJ picked through the opinions to come up with a finding that he is not disabled. The undersigned finds that the ALJ appropriately considered the medical opinions and his conclusions are supported by substantial evidence in the record.

<u>Dr. Ayres</u>

The record contains a letter dated December 6, 2007, signed by Jana Ayres, D.O., which states that "David is unable to work due to his disease process of HIV." [R. 278]. The ALJ noted that under the Commissioner's regulations treating source opinions are given controlling weight if they are well-supported by acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence of record. The ALJ found that Dr. Ayres' treatment records do not support her opinion. The ALJ accurately noted Plaintiff's decreased viral load, that Plaintiff admitted to being in good health, denied fevers, headaches, loss of appetite, night sweats, sinusitis, lung problems, chest pain, or

---

[1] Plaintiff raises a number of disparate issues under the overly broad topic heading: "The ALJ's RFC Is Unsupported By The Substantial Evidence Of The Record As A Whole." [Dkt. 12, pp. 2-9]. Plaintiff's topic heading does not comply with the instructions contained in the Scheduling Order. Further, some of the issues do not address the question of substantial evidence, but question whether the ALJ correctly applied the applicable legal standards. These are different inquiries.
  Plaintiff's counsel is strongly encouraged to clearly focus arguments as directed in the Scheduling Order:
> Plaintiff must list and number <u>each specific error</u> the Commissioner or the ALJ made in concluding that Plaintiff was not disabled.

[Dkt. 7]. [emphasis supplied].

anorexia. [R. 517, 274, 286, 296, 942, 945]. The record reflected Plaintiff was tolerating medicines with no side effects and records from 2011 revealed that Plaintiff's HIV was asymptomatic. [R. 517, 274, 286, 296, 931, 942, 943].

Plaintiff argues that it was inappropriate for the ALJ to rely on his viral load as a factor, and cites another lab result that is more indicative of his HIV status. [Dkt. 12, p. 3; Dkt. 20, p. 2]. Indeed, the lab results are not necessarily important in assessing a disability claim. Rather it is the functional limitations that result from a claimant's medical impairments that are to be evaluated for the RFC. In that regard, the ALJ properly noted the absence of functional limitations that exceed the ability to perform work at the RFC. Plaintiff points to several points in the record where medication side effects and other findings were reported that may be contrary to the ALJ's recitation of reasons for rejecting Dr. Ayres' opinion. The question, however, is not whether there are some findings in the record that contradict the ALJ's findings. The question in regard to Dr. Ayres' opinion is whether Dr. Ayres' records support her opinion. Plaintiff has not pointed to anything within Dr. Ayres' records to support her opinion. The undersigned finds no error in the ALJ's rejection of Dr. Ayres' opinion.

The undersigned rejects Plaintiff's assertion that the ALJ was required by *Social Security Ruling* (SSR) 96-5p, 1996 WL 374183, to recontact Dr. Ayres. [Dkt. 12, p. 3; Dkt. 20, p. 2]. SSR 96-5p provides, in relevant part:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

5

1996 WL 374183 at *6. However, the quoted portion of SSR 96-5p is derived from 20 C.F.R. §§ 404.1512(e) and 416.912(e)[2] which were amended in February 2012 and no longer <u>require</u> the ALJ to recontact medical sources.

At the time of the ALJ's decision, October 24, 2013, 20 C.F.R. §§ 404.1520b(c) and 416.920b(c) governed the ALJ's responsibility to recontact a medical source. Those regulations do not <u>require</u> the ALJ to recontact a medical source as the previous regulation did when there is an inconsistency or insufficiency in the evidence. Since the amendment the ALJ has flexibility to resolve such issues, as follows:

> (c) If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section. We might not take all of the actions listed below. We will

---

[2] Until February 22, 2012, 20 C.F.R. §§ 404.1512(e) and 416.912(e) provided in relevant part:

> (e) *Recontacting medical sources.* When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether your are disabled, we will need additional information to reach a determination or a decision. To obtain the information we <u>will</u> take the following actions,
>
> (1) We <u>will</u> first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We <u>will</u> seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. . . .

(emphasis supplied).

On February 23, 2012, the foregoing provisions were eliminated and replaced with 20 C.F.R. §§ 404.1520b(c) and 416.920b(c). 77 Fed. Reg. 10655, Feb. 23, 2012; 77 Fed. Reg. 10656, Feb. 23, 2012.

6

> consider any additional evidence we receive together with the evidence we already have.
>
>> (1) We <u>may</u> recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;
>> (2) We <u>may</u> request additional existing records (see § 404.1512);
>> (3) We <u>may</u> ask you to undergo a consultative examination at our expense (see §§ 404.1517 through 404.1519t); or
>> (4) We <u>may</u> ask you or others for more information.
>
> (d) When there are inconsistencies in the evidence that we cannot resolve or when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether you are disabled, we will make a determination or decision based on the evidence we have.

20 CFR §§ 404.1520b, 416.920b. (emphasis supplied). In light of the elimination of the regulations' requirement for the ALJ to recontact medical sources, the corresponding requirement contained in SSR 96-5p is no longer applicable. As a result, the undersigned finds no error in the ALJ's failure to recontact Dr. Ayres for further support of her opinion.

### Dr. Trinidad

The ALJ rejected the opinion by Kenneth Trinidad, D.O. that Plaintiff was temporarily totally disabled (TTD). The ALJ gave Dr. Trinidad's opinion no weight, explaining that the term TTD is used in the workers' compensation context, and uses different criteria to determine whether a claimant can work than the criteria used in Social Security disability

decisions. [R. 518]. The undersigned finds no error in the treatment of Dr. Trinidad's opinion.

### Dr. Smith, Dr. Marks-Snelling, and Dr. Reddy

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because Disability Determination Service (DDS) consultant, Janice B. Smith, Ph.D., opined that Plaintiff's mental impairments were not severe. [R. 247-257]. That opinion conflicts with the ALJ's conclusion that Plaintiff does have a severe mental impairment. Plaintiff argues that the opinion of DDS consultant, Judy Marks-Snelling, D.O., that Plaintiff can perform medium work, [R. 261-268], conflicts with the ALJ's RFC finding for less than a full range of sedentary work. [Dkt. 12, p. 5]. Plaintiff also points out that the RFC assessment by Sri K. Reddy, M.D., [R. 428-433], conflicts somewhat with the ALJ's RFC.[3] Since the ALJ's RFC finding was more favorable to Plaintiff than the opinions of these doctors, these alleged inconsistencies provide no basis for reversing the ALJ's decision. Plaintiff could not possibly have been prejudiced by a more favorable RFC finding. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162-63 (10th Cir. 2012). (finding no prejudice where ALJ failed to assign weight to an opinion that did not help Plaintiff).

If Plaintiff is trying to argue that the ALJ's RFC is not supported by substantial evidence because it is not based directly on a medical opinion, that argument is rejected. There is no requirement in the regulations or case law for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.

---

[3] The ALJ's RFC assessment was more restrictive than Dr. Reddy's: the ALJ restricted Plaintiff to only occasional overhead reaching, while Dr. Reddy found that he could reach frequently; the ALJ found occasional use of foot pedals, Dr. Reddy said frequent pedal use; and the ALJ limited stooping, crouching and crawling to occasionally, Dr. Reddy said frequent. [R. 428-433, 512].

*Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004) (following 20 C.F.R. § 416.927(e)(2) and SSR 96–59, 1996 WL 374183, at *5); see also 20 C.F.R. §§ 404.1546(c) and 416.946(c). The Tenth Circuit has thus "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949; see, e.g ., *Wall v. Astrue,* 561 F.3d 1048, 1068–69 (10th Cir. 2009)(upholding ALJ's findings on mental impairment where record did not contain any treating or examining medical opinions as to allegedly disabling pain disorder); *Bernal v. Bowen*, 851 F.2d 297, 302–03 (10th Cir.1988) (holding ALJ properly made mental RFC findings without expert medical assistance).

### Mental RFC Finding

When, as in this case, there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and is required to document the application of the procedure, known as the psychiatric review technique (PRT), in the decision. 20 C.F.R. §§ 404.1520a(e), 416.920a(e), *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008)(discussing application of the psychiatric review technique by the ALJ), *Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995) (same). The procedure for evaluating alleged mental impairments requires the ALJ to consider the effect of the mental impairment on four broad areas of functioning known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation of extended duration. *See* 20 C.F.R., Part 404, Subpart

9

P, Appendix 1, § 12.00 (C). The findings related to the "paragraph B" criteria are not RFC findings, but rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The ALJ specifically stated the RFC assessment reflects the degree of limitation he found in the "paragraph B" mental function analysis. [R. 512].

There is no merit to Plaintiff's assertion that the RFC conflicts with the ALJ's finding that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. That finding was made in the context of the ALJ's severity finding at step two and is not an RFC finding. The ALJ's RFC finding included work-related mental limitations supported by substantial evidence.

Plaintiff argues broadly that the RFC limitation to "simple work" failed to account for his mental limitations. Plaintiff does not, however, explain what work-related mental function he is unable to perform. Nor does Plaintiff's argument in this regard contain any reference to the record demonstrating he has less ability than the RFC for understanding, remembering, and carrying out simple instructions in a work-related setting without more than occasional interaction with the public. The undersigned finds that the ALJ's decision accurately summarizes the mental health record and that the RFC is supported by substantial evidence.

Plaintiff objects to the ALJ's PRT finding that Plaintiff had no episodes of decompensation and that his medication was effective. [Dkt. 12, p. 7]. The question of episodes of decompensation and the effectiveness of medication are not related concepts. Plaintiff's assertion that the ALJ erred in making the statement that his mental health

treatment was effective is not accompanied by any discussion of the evidence or focused argument and will not be discussed further.[4]

The ALJ did not find that Plaintiff had not had any episodes of decompensation, the ALJ found that Plaintiff "experienced no episodes of decompensation, which had been of extended duration." [R. 511]. The phrase "episodes of decompensation of extended duration" is a term of art. The evaluation of episodes of decompensation arises in conjunction with the performance of the PRT analysis. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3). In addition to discerning whether a mental impairment is "severe," at step two, the PRT is completed for the purpose of evaluating whether a mental impairment meets a Listing.[5] The Listings for mental disorders require, among other things, that the record demonstrate "repeated episodes of decompensation, each of extended duration." Listing §12.00C(4) defines those terms, as follows:

> The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

20 CFR Pt. 404, Subpt. P, App. 1. (emphasis in original). Given the foregoing definition, the undersigned finds no error in the ALJ's failure to characterize Plaintiff's single suicide

---

[4] It is Plaintiff's duty on appeal to support his arguments with references to the record and to tie relevant facts to his legal contentions. The court will not "sift through" the record to find support for the claimant's arguments. *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir.1992), *United States v. Rodriguiez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997)(appellants have the burden of tying the relevant facts to their legal contentions and must provide specific reference to the record to carry the burden of proving error).

[5] The Listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively prevent a person from performing any gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App

attempt on May 22, 2008 which resulted in a hospital stay until May 26, 2008, [R. 376],as an episode of decompensation of extended duration.

### Development of the Record

Plaintiff argues that the ALJ failed in his duty to develop the record because he failed to order a consultative mental examination as requested by his counsel at the hearing held on February 23, 2009. [R. 708]. Given the long pendency of this case (May 2007 to October 2013), the fact that there have been two hearings subsequent to the February 2009 hearing (June 11, 2012 and September 11, 2013), and the record contains medical records from 2003 to July 2013, the undersigned fails to see how Plaintiff was harmed by the ALJ's failure to order a consultative examination in 2009. Moreover, the ALJ's decision reflects that the record contained sufficient evidence for the ALJ to assess Plaintiff's alleged mental impairments during the relevant time frame, May 2007 to December 2011. [R. 516-517]. Accordingly, the undersigned finds that the ALJ did not fail to develop the record.

### Credibility Determination

"[C]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir.2010) (internal quotation marks omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted).

The ALJ gave numerous reasons, tied to the record for his finding that Plaintiff's limitations are not as severe as alleged. Throughout the decision, the ALJ contrasted Plaintiff's allegations with normal range of motion, normal strength findings, and the

absence of muscle atrophy. [R. 514, 515, 518, 519]. The ALJ considered reports of the effectiveness of medications, and lack of side effects, [R. 515, 516, 517]; Plaintiff's daily activities, [R. 517, 518]; and the lack of aggressive treatment or surgery for Plaintiff's back problems. The undersigned finds that the ALJ adequately linked his credibility finding to the record and that the reasons for the credibility determination are supported by substantial evidence.

The undersigned finds no error in the ALJ's mention of the lack of aggressive treatment such as surgery as undermining the credibility of Plaintiff's allegations of disabling pain. Treatment for relief of pain is an appropriate consideration in the evaluation of credibility. 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). Plaintiff asserts that epidural injections were recommended in September 2007, [R. 305], but notably does not assert that he actually received such injections. [Dkt. 12, p. 8]. In any event, Plaintiff's back treatment was only one of several reasons for the ALJ's credibility decision.

Plaintiff also objects to the ALJ's mention of his marijuana and alcohol abuse, contending that no physician indicated such use was interfering with his treatment. *Id.* What the ALJ said about alcohol and marijuana abuse follows:

> Given the claimant's mood and symptoms were generally stable upon most examinations, combined with the claimant's reports that his symptoms were improved on medications, diminishes the claimant's credibility regarding his symptoms and limitations caused by depression and anxiety. Additionally, it was noted throughout the file the claimant was abusing marijuana and alcohol (Exhibit 7F; Exhibit 8F; Exhibit 12F) and it is reasonable to assume the claimant's noncompliance with treatment could have been altering the effectiveness of medications and exacerbating his symptoms.

[R. 517]. The undersigned reads the foregoing as essentially pointing out that Plaintiff's mental health symptoms were generally stable and medications were effective even though Plaintiff was abusing marijuana and alcohol, and without such abuse it is reasonable to assume Plaintiff would be even better off. The undersigned finds that the ALJ's comment about marijuana and alcohol does not deprive the credibility determination of support by substantial evidence.

Plaintiff offers arguments against the factors cited by the ALJ in support of his credibility finding. The undersigned views those arguments as an invitation to engage in impermissible reweighing of the evidence. As the Tenth Circuit has instructed, the court must decline that invitation. *See Rabon v. Astrue*, 464 Fed. Appx. 732, 735-36 (10th Cir. 2012)(citing *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)).

### Step Five Finding

Plaintiff argues that the ALJ erred because he failed to advise the vocational expert that her testimony had to be consistent with the Dictionary of Occupational Titles (DOT). The undersigned observes that the vocational expert's testimony included references to the DOT, [R. 554-555], and further that Plaintiff has not identified any actual inconsistency between the vocational expert's testimony and the DOT. Further, the ALJ's decision contains a finding that the vocational expert's testimony is consistent with the information in the DOT. [R. 521].

Plaintiff argues that the jobs identified by the vocational expert are outside of the ALJ's RFC finding. Plaintiff asserts he cannot perform the job of "trimmer," DOT# 692.685-266, 1991 WL 678774, because the RFC limits him to only occasional use of foot pedals and the trimmer job requires the operation of foot pedals. The description of the trimmer

14

job reflects the job does require operation of foot pedals, but does not specify the frequency of foot pedal use. The undersigned finds Plaintiff has not demonstrated that this job is beyond his RFC.

Plaintiff asserts that the job of clerical mailer, DOT# 209.587-010, 1991 WL 671797, and the trimmer job are beyond his RFC because they require frequent reaching and he is limited to no more than occasional <u>overhead</u> reaching. The undersigned finds that these jobs are not precluded by a limitation to only occasional overhead reaching. The DOT listing for the jobs indicate they require frequent reaching, but that refers to reaching in any direction. Nothing in the DOT listing indicates whether any overhead reaching is required. In a similar circumstance, the Tenth Circuit recognized that given the broad definition of reaching, it was unclear what kind of reaching a job required but noted that even a job requiring frequent reaching would not necessarily require more than occasional overhead reaching. The Court reasoned that where, as here, the vocational expert was aware of the claimant's limitations on overhead reaching, the vocational expert's testimony did not conflict with the DOT, but clarified how the broad classifications applied to the individual case. *Segovia v. Astrue*, 226 Fed.Appx. 801, 804 (10th Cir. 2007).

Plaintiff also argues that all three jobs identified by the vocational expert are beyond his RFC for understanding, remembering, and carrying out "simple" instructions because the DOT reflects these jobs have a reasoning level 2 which requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT; Appendix C, p. 1011. The undersigned disagrees that reasoning level 2 is precluded by the ALJ's RFC findings.

15

Reasoning level 2 is one of 6 levels of reasoning development that are assigned to jobs in the DOT. Level 1 is the lowest level and 6 is the highest. Level 2 requires the ability to: "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." The reasoning development level in the DOT addresses the degree of analytical problem solving required by a job. A designation that a job involves carrying out detailed, but uninvolved instructions indicates that every step of the process is defined, but that the process is fairly simple, ie. uninvolved. Nothing about that circumstance is inconsistent with the ALJ's findings.

The ALJ questioned the vocational expert about where the vocational expert obtained the job numbers. The vocational expert answered that the numbers were averages from a number of sources: Department of Labor; employment agencies; U.S. stats; industry publications; and some online websites. [R. 554-555]. In a footnote Plaintiff argues that this methodology is contrary to the regulations, rulings and case law. [Dkt. 12, p. 10, n.8]. In support, Plaintiff cited *Wheeler v. Colvin*, 13-CV-728-JED-FHM (N.D. Okla. Feb. 12, 2015)(unpublished) where the Commissioner's decision was remanded in part because the vocational expert testified that he guessed about the reduction in the number of jobs available when a sit/stand option was considered. *Id.* Dkt. 17, pp. 7-8. Unlike the *Wheeler* case, in the instant case, the number of jobs was not arrived at by means of a guess. The vocational expert clearly testified as to the methodology used. Plaintiff has not shown that methodology to be unacceptable.

The undersigned finds that Plaintiff has not demonstrated error in the ALJ's step five findings.

## **Conclusion**

The undersigned United States Magistrate Judge finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the undersigned United States Magistrate Judge RECOMMENDS that the decision of the Commissioner finding Plaintiff not disabled be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before February 2, 2016.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 19th day of January, 2016.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

17