UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID O. WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-0027-CVE-FHM |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is the report and recommendation (Dkt. # 21) of Magistrate Judge Frank H. McCarthy recommending that the Commissioner's decision denying plaintiff David O. White's claim for disability benefits be affirmed. Plaintiff has filed an objection (Dkt. # 22) to the report and recommendation and he asks the Court to remand the case for further administrative proceedings. Defendant has filed a response (Dkt. # 23) to plaintiff's objection, and defendant asks the Court to accept the report and recommendation in its entirety.

**I.**

On May 23, 2007, David O. White filed an application for disability benefits that was denied initially and on reconsideration, and an administrative law judge (ALJ) entered a written decision denying White's application on October 22, 2009. Dkt. # 11-9, at 5-16. The Appeals Council denied White's request for review and he appealed the ALJ's decision to federal district court, and the court remanded the case for further administrative proceedings. Id. at 20-24. On remand, an ALJ issued a partially favorable decision for White and found that he was disabled as of December 5, 2011, but the ALJ determined that White was not disabled before that date. Id. at 39. The

Appeals Council affirmed the award of benefits as of December 5, 2011, but the case was again remanded for consideration of medical evidence to determine if White could have been considered disabled at an earlier date. Id. at 47-49.

On remand from the Appeals Council, the ALJ set the matter for a hearing, and White appeared at the hearing and was represented by counsel. Counsel argued that White had HIV that became full-blown AIDS, and this condition considered along with White's back pain, nausea, and fatigue precluded him from working. Dkt. # 11-8, at 94. The ALJ noted that medical evidence from 2007 showed that White was not taking medication for HIV and that his condition did not appear to be deteriorating at that time. Id. at 95. White testified that during the relevant time period he suffered from severe back and leg pain, and he was taking medication for depression. Id. at 102-03. White claimed that he was taking medication for HIV beginning in 2004. Id. at 105. He claimed that he suffered from chronic fatigue and that he could not perform even small household tasks. Id. at 108. White attempted to commit suicide in 2008 due to anxiety and depression. Id. at 111. The ALJ called a vocational expert (VE) to testify and she explained that it would not be feasible for a hypothetical claimant with White's limitations to perform his past relevant work. Id. at 115-16. However, the VE identified three jobs that the hypothetical claimant could perform with the specified RFC, and the VE provided the citations to the Dictionary of Occupational Titles (DOT) for the jobs. Id. at 116-17.

The ALJ entered a written decision finding that White was not disabled between May 1, 2007 and December 4, 2011. Id. at 67-83. The ALJ determined that White had the severe impairments of degenerative disc disease of the lumbar spine, HIV/AIDS, generalized anxiety disorder, and depression. Id. at 72. The ALJ did not find that any impairment or combination of

impairments met or medically equaled any of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ found that White had the following RFC for the time period between May 1, 2007 and December 4, 2011:

> David Owen White was 44 years of age on the alleged onset date of disability (May 1, 2007) (he was 47 years of age on the date last insured, June 30, 2009) (he is currently 51 years of age . . .) with a high school education (1981) with past relevant work identical to that identified by the [VE] in this case to include that of a plumber (1997-2004); temporary day laborer (2006). With respect to lifting, carrying, pushing, and pulling, he was limited to light and sedentary exertion work. With respect to walking or standing, he was limited to 2 hours (combined total) of an 8-hour workday with regular work breaks. He was able to sit for 6 hours (combined total) of an 8-hour workday, with regular breaks. He was able to climb ramps or stairs only occasionally and was unable to climb ropes, ladders, and scaffolds, or work in environments where he would have been exposed to unprotected heights and dangerous moving machinery parts. He was unable to perform tasks requiring overhead reaching more than occasionally, and was further unable to perform tasks requiring the use of foot pedals more than occasionally. He was able to understand, remember, and carry out simple instructions in a work-related setting, but was unable to interact with the general public more than occasionally, regardless of whether that interaction was in person or over a telephone.

Id. at 74. The ALJ summarized White's testimony and the medical evidence, and he acknowledged that he relied on White's subjective complaints and gave White "the benefit of the doubt" when crafting an RFC that was more restrictive than required by the medical evidence. Id. at 81. The ALJ found that White was unable to perform any of his past relevant work, but there were jobs in sufficient numbers in the regional and national economies that White could perform with his RFC. Id. at 82. Based on this finding, the ALJ determined that White was not disabled from May 1, 2007 to December 4, 2011. Id. at 83. The Appeals Council found no reason to review the ALJ's decision and the ALJ's written decision became the Commissioner's final decision. White appealed the decision to this Court, and the matter was assigned to a magistrate judge for a report and

recommendation. The magistrate judge has entered a report and recommendation (Dkt. # 21) recommending that the Commissioner's decision be affirmed.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

## III.

Plaintiff has filed an objection (Dkt. # 22) to the magistrate judge's report and recommendation, and the Court will review the specific objections raised by plaintiff under a de novo standard of review. Plaintiff's objections fall into three broad categories: (1) the ALJ's findings as to plaintiff's physical RFC are not supported by substantial evidence; (2) the ALJ's findings as to plaintiff's mental limitations are not supported by substantial evidence; and (3) the ALJ erred at step five of the analysis when he determined that there were jobs that plaintiff could perform with his RFC.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work. *See Id.* Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of his past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991). The ALJ issued a written decision that was reviewed by the Appeals Council, which is a final decision by an administrative agency. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855,

858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

**A.**

Plaintiff argues that the ALJ failed to give sufficient weight to certain medical opinion evidence and the RFC formulated by the ALJ includes restrictions that are not supported by the medical evidence. He also argues that the ALJ should have re-contacted one of his treating physicians before issuing a decision on plaintiff's claim for disability benefits.

Plaintiff objects to the magistrate judge's recommendation, that the ALJ's decision not to give controlling weight to Jana Ayres, D.O.'s opinion that plaintiff was unable to work, was supported by substantial evidence. Id. at 1-2. On December 6, 2007, Dr. Ayres wrote a letter stating that "David White is a current patient of OSU Internal Medicine Specialty Services Clinic. David is unable to work due to his disease process of HIV." Dkt. # 11-7, at 123. The ALJ found that Dr. Ayres' opinion was inconsistent with Dr. Ayres' treatment records, and the issue of disablity was not a medical issue and treating source opinions on the ultimate issue of disability are not entitled to "controlling weight or special significance." Dkt. # 11-8, at 80. The ALJ cited a treatment record from November 14, 2007 showing that plaintiff's viral load was significantly reduced. Id. at 79. Other treatment records from late 2007 and early 2008 show that plaintiff advised Dr. Ayres that he was in good health and he was tolerating medications well. Dkt. # 11-7, at 119, 141.

Plaintiff argues that the ALJ's decision not to give Dr. Ayres' opinion controlling weight is not supported by substantial evidence, and he cites the following medical evidence. On December 6, 2007, plaintiff reported to Dr. Ayres that he had been suffering from abdominal pain for about a week. Id. at 126. On August 22, 2007, plaintiff suffered from insomnia and constipation, but he otherwise admitted to being in good health. Id. at 195. Beginning in July 2008, plaintiff began to complain of chronic fatigue and weakness. Dkt. # 11-13, at 174, 198, 210, 216, 228, 232. However, the medical evidence cited by plaintiff does not suggest any specific limitations on plaintiff's ability to work and there is no indication that the fatigue is so severe that it would impose any functional limitations. The ALJ was also correct that a treating physician's opinion on the ultimate issue of disability is not entitled to controlling weight. 20 C.F.R. § 404.1527(d); SSR 96-5p, 1996 WL 374183. A treating physician may offer an opinion about the nature or severity of a claimant's symptoms, diagnosis, and prognosis, but any opinion expressed by the physician that a claimant is totally unable to work is not entitled to controlling weight. Castellano v. Sec. of Health and Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). The letter (Dkt. # 11-7, at 123) simply states Dr. Ayres' opinion that plaintiff is unable to work due to the process of the HIV virus, but the letter does not specify what symptoms or limitations plaintiff had that prevented him from working. The ALJ did not have to afford Dr. Ayres' opinion as to the ultimate issue of disability controlling weight, but the ALJ did not simply reject the opinion on that basis. The ALJ's written decision shows that he reviewed the underlying medical evidence and separately determined that Dr. Ayres' decision that plaintiff was unable to work was not supported by the treatment records. The Court finds that the ALJ's decision not to give Dr. Arye's opinion controlling weight was supported by substantial

evidence, and plaintiff has not shown that the ALJ ignored treatment records from Dr. Ayres that would have established actual physical limitations.

Plaintiff argues that the ALJ was obligated to re-contact Dr. Ayres before rejecting her opinion that plaintiff was unable to work. Under 20 C.F.R. § 404.1520b, an ALJ may take the following actions if the "the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about you are disabled:"

(1) We may recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;

(2) We may request existing records (see § 404.1512);

(3) We may ask you to undergo a consultative examination at our expense (see §§ 404.1517 through 404.1519t); or

(4) We may ask you or others for more information.

Plaintiff appears to be arguing that the ALJ should have recontacted Dr. Ayres because the ALJ concluded that Dr. Ayres' opinion as to plaintiff's ability to work was not entitled to controlling weight. Dkt. # 22, at 2-3. However, the regulation does not require an ALJ to recontact a physician simply because the ALJ has found that the opinion should not be given controlling weight, and the focus is on the sufficiency of the evidence as a whole and whether the ALJ can make a decision based on the evidence in the administrative record. Plaintiff claims that the ALJ should have recontacted Dr. Ayres but he has made no attempt to show that the ALJ was unable to reach a decision due to insufficient evidence. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001)

(explaining that a duty to recontact a physician arises only when the evidence is "inadequate" and "it is not the rejection of the treating physician's opinion that triggers the duty"). The ALJ considered the medical evidence underlying Dr. Ayres' opinion as to plaintiff's ability to work and his decision to reject that opinion was based on substantial evidence, and the ALJ had no duty to re-contact Dr. Ayres under § 404.1520b.

Plaintiff claims that the ALJ failed to consider Kenneth R. Trinidad, D.O.'s opinion that plaintiff was temporarily totally disabled (TTD) as of October 4, 2007, and he argues that the ALJ should have considered the conditions and symptoms identified by Dr. Trinidad in his report,[1] even if the concept of TTD is not relevant in a social security setting. Dkt. # 22, at 4. The ALJ found that Dr. Trinidad's conclusion that plaintiff was TTD was not relevant to plaintiff's claim for disability benefits, but he did consider Dr. Trinidad's clinical findings as to plaintiff's physical condition. Dkt. # 11-8, at 80. The ALJ noted that Dr. Trinidad stated that plaintiff had not reached maximum medical recovery, but plaintiff was not a candidate for surgery for his lumbar pain and that plaintiff received conservative treatment. Id. Even though plaintiff had not reached maximum medical recovery for a work-related injury, the ALJ found that plaintiff could perform the RFC stated in the ALJ's decision from May 1, 2007 to December 5, 2011. Id. Plaintiff has cited no authority suggesting that an ALJ must consider a physician's opinion about a claimant's status for the purpose of state workers' compensation law, and the ALJ correctly noted that the concept of TTD is distinguisable from the requirements to establish disability under federal law. The ALJ did consider Dr. Trinidad's report and determined that Dr. Trinidad's clinical findings were consistent

---

[1] The report was prepared by Dr. Trinidad at the request of an attorney who it appears was representing plaintiff in workers' compensation proceedings. Dkt. # 11-13, at 3-7.

with the RFC stated in the ALJ's written decision. Plaintiff has not shown that the ALJ committed any error in his treatment of the actual findings made by Dr. Trinidad and the ALJ appropriately disregarded Dr. Trinidad's opinion as to TTD, and the Court finds no basis to remand the case due to the ALJ's treatment of Dr. Trinidad's opinions or examination.

Plaintiff's final challenge to the physical limitations included in the RFC concerns the ALJ's treatment of the opinions of Judy Marks-Smelling, D.O., and Sri K. Reddy, M.D., and plaintiff argues that the RFC is not supported by substantial evidence due to the ALJ's decision to include more physical limitations than recommended by these physicians. Plaintiff claims that Dr. Marks-Smelling determined that plaintiff had physical limitations more consistent with medium work, and he argues that this directly conflicts with the ALJ's RFC that plaintiff could perform only sedentary work. Dkt. # 22, at 4. He also claims that the ALJ gave more weight to the findings of Dr. Reddy but the ALJ's RFC conflicts with Dr. Reddy's findings. Id. The ALJ explained that he considered the medical evidence and provided a more generous RFC based on plaintiff's subjective complaints, and he expressly stated that he giving plaintiff the "benefit of the doubt" by providing a somewhat generous RFC. Dkt. # 11-8, at 81. The Court does not find that the ALJ committed any reversible error in this regard. Even if each limitation in the RFC was not explicitly linked to medical evidence, the ALJ explained that he was including more limitations in the RFC based on plaintiff's subjective complaints and this shows that the ALJ considered the medical evidence in light of plaintiff's testimony and other subjective evidence. Id. In addition, it would serve no purpose to remand the case to require the ALJ to consider whether he should adopted a more restrictive RFC, because this would not affect the outcome and any error by the ALJ in formulating the RFC was harmless. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1162-63 (10th Cir. 2012).

**B.**

Plaintiff argues that the ALJ erred by failing to include limitations as to concentration, persistence, and pace in the RFC, because at step two the ALJ found that plaintiff had moderate limitations as to concentration, persistence, and pace and these restrictions were not included in the RFC. Dkt. # 22, at 6-7. Plaintiff also claims that the ALJ should have ordered a consultative examination as to plaintiff's psychological condition, because the ALJ found that plaintiff had severe mental impairments but the evidence was unclear as to what limitations stemmed from those impairments. Id. at 8.

Plaintiff asserts that the ALJ made findings at step two that plaintiff had moderate difficulties maintaining concentration, persistence, or pace, and the ALJ erred by failing to incorporate these findings into the RFC. Dkt. # 22, at 6. However, the law is clearly settled that findings as to concentration, persistence, pace at steps two and three do not automatically apply at step four when the ALJ is formulating a claimant's RFC. Suttles v. Colvin, 543 F. App'x 824, 826-27 (10th Cir. Oct. 31, 2013); Beasley v. Colvin, 520 F. App'x 748, 754 (Apr. 10, 2013).[2] The cases cited by plaintiff stand for the uncontroversial statement that an ALJ must consider evidence of mental impairments, including limitations in concentration and attention, when formulating a claimant's RFC or a hypothetical question for the VE, but none of the cases stands for the proposition that step two and three findings as to concentration, persistence, or pace must be included in the RFC. See Jarmillo v. Colvin, 576 F. App'x 870, 874 (10th Cir. Aug. 27, 2014); Bowers v. Astrue, 271 F. App'x 731, 733-34 (10th Cir. Mar. 26, 2008); Miranda v. Barnhart, 205 F. App'x 638 (10th Cir.

---

[2]  These and all other unpublished opinions cited herein are not precedential but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

11

Aug. 11, 2005); Widerholt v. Barnhart, 121 F. App'x 833, 839 (10th Cir. Feb. 8, 2005). In this case, the ALJ's hypothetical question to the VE included mental limitations that the hypothetical claimant could carry out simple instructions only and that the hypothetical claimant could have only minimal interaction with the public. Dkt. # 11-8, at 115. The RFC formulated by the ALJ accounted for limitations due to plaintiff's mental condition, and the RFC limited plaintiff to jobs which required only simple instructions and significant limitations on plaintiff's interaction with the general public. Id. at 74. The ALJ was not required to expressly include limitations on concentration, persistence, and pace in the RFC, and the RFC formulated by the ALJ adequately accounted for any mental limitations that were supported by the medical evidence.[3]

Plaintiff claims that the ALJ erred by concluding that plaintiff's medication for depression was effective and that there was no evidence of decompensation, because the evidence shows that he attempted suicide in May 2008. Dkt. # 22, at 7-8. The magistrate judge correctly noted that plaintiff's argument is not well developed and that plaintiff's argument is based on a misstatement of the ALJ's findings. The ALJ stated that "the claimant had experienced no episodes of decompensation, which had been of extended duration." Dkt. # 11-8, at 73. This finding was made in the context of the ALJ's step two and three analysis, and the term "repeated episodes of decompensation" is a term of art. See 20 C.F.R., Part 404, Subpart P, Appx. 1. "Repeated episodes

---

[3] Plaintiff argues that Janice B. Smith, Ph.D., evaluated plaintiff and found that he had no severe mental impairments that would support any functional limitations, and it appears that plaintiff is making a similar argument that has already been considered in regard to the opinions of Drs. Marks-Smelling and Reddy. Dkt. # 22, at 4. Dr. Smith did opine that plaintiff had no severe mental impairments. Dkt. # 11-7, at 92. However, the Court finds that the ALJ's decision to include some mental limitations in the RFC does not constitute reversible error, because any such error in favor of plaintiff by imposing a more restrictive RFC is harmless.

12

of decompensation" is defined as "three episodes within 1 year, or an average of once every four months, each lasting for at least 2 weeks." Id. One suicide attempt resulting in a hospitalization for less than one week clearly does not qualify as repeated episodes of decompensation, and the ALJ's step two and three finding that plaintiff did not suffer repeated episodes of decompensation is supported by substantial evidence. The ALJ clearly considered in his written decision evidence concerning plaintiff's suicide attempt, and the record is clear that this evidence was not ignored when the ALJ was evaluating plaintiff's mental limitations.

Plaintiff also claims that the ALJ should have ordered a psychological evaluation by a consultative examiner, because there was not sufficient evidence in the administrative record to assess any limitations caused by plaintiff's mental impairments. Dkt. # 22, at 8. In the initial hearing in 2009, plaintiff's counsel asked the ALJ to order a psychological examination by a consultative examiner, but the ALJ did not order such an examination before issuing his decision. See Dkt. # 11-10, at 25-26 (plaintiff's counsel requested psychological examination at hearing). Plaintiff claims that the ALJ erred by failing to order the requested examination, but he does not make any attempt to show how this would be relevant to the ALJ's decision following the administrative hearing at issue in this Opinion and Order. The hearing at issue took place on September 11, 2013, and there is a well-developed body of medical evidence as to plaintiff's psychological condition between May 2007 and December 2011. The Tenth Circuit has stated that a consultative examination may be required when there is a direct conflict in the medical evidence or the evidence is inconclusive and supplementation of the record is required. Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997). Plaintiff has not identified any specific findings of the ALJ as to plaintiff's psychological condition that are not supported by substantial evidence, and he has

not shown that there is a direct conflict of the medical evidence on any issue relating to plaintiff's mental limitations. Plaintiff has not shown that a request for a consultative examination with a psychologist should have been granted by the ALJ, even if this request had been made at the September 2013 hearing, and the Court finds no error based on the ALJ's failure in 2009 to order such an examination.

## C.

Plaintiff claims that the ALJ erred at step five of the analysis by finding that plaintiff could perform the jobs of trimmer or clerical mailer, because the testimony of the VE was not consistent with the DOT and the jobs of trimmer and clerical mailer require "frequent" reaching, instead of "occasional" reaching. He also argues that the ALJ failed to inquire generally if the VE's testimony was consistent with the DOT.

The ALJ relied on the testimony of the VE and found that plaintiff could perform the jobs of clerical mailer, trimmer, and bonder assembler, and these jobs existed in sufficient numbers in the regional and national economies. Dkt. # 11-8, at 83. Plaintiff's objection to the report and recommendation focuses on the jobs of trimmer and clerical mailer, and he argues that these jobs require frequent reaching, while his RFC limits him to occasional overhead reaching. Dkt. # 22, at 10. For the purpose of this Opinion and Order, the Court will focus on the job of bonder assembler and consider whether plaintiff's RFC would allow him to perform this job. The job of bonder assembler is described in § 726.685-066 of the DOT,[4] and this job is classified as sedentary work

---

[4] The relevant section of the DOT providing a description for the job of bonder or semiconductor can be located at 1991 WL 697631.

with a reasoning level of 2.[5] Occasional reaching is required but the DOT does not specify whether the job requires the use of foot pedals. However, the job requires "markedly low aptitude ability" for eye-hand-foot coordination and the job description does not suggest that the use of foot pedals is required. The job does not require a person to climb, balance, stoop, kneel, or crawl. Plaintiff's RFC limits him to occasional overhead reaching, but this does not conflict with a requirement of occasional reaching in any direction. The requirements of the job of bonder assembler do not conflict with plaintiff's RFC. Plaintiff claims that the ALJ did not ask the VE if the VE's testimony was consistent with the DOT, but the VE identified the jobs using DOT identification numbers and the Court has independently compared plaintiff's RFC to the job requirements for a bonder assembler. Even if plaintiff is correct that he could not perform the jobs of trimmer or clerical mailer, the Commissioner has met her burden to show that there is at least one job in the regional and national economies that plaintiff could perform, and the Commissioner's decision that plaintiff is not disabled should be affirmed.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 21) is **accepted**, and the Commissioner's decision denying plaintiff's claim for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 23rd day of March, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff argued in his opening brief that the RFC limited him to carrying out simple instructions and that a reasoning level of 2 exceeded the RFC. The magistrate judge rejected this argument and plaintiff did not object to the report and recommendation on this issue. See Dkt. # 21, at 16. The Court's review is limited to the specific objections made to the report and recommendation, and the Court will not independently review the magistrate judge recommendation on this issue.